(No. 5383-

WOODROW WOMBLE and VELDA WOMBLE, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

Opinion filed April 27, 1971.

SCHIMMEL AND SCHIMMEL, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

Burks, J.

This is an action to recover damages for the pollution and contamination of claimants' well. The pollution was allegedly caused by acts done or permitted by the respondent at a place along the shoulder of U. S. Route 54 in reasonably close proximity to the residence and well of the claimants at Atlas, in Pike County, Illinois.

The complaint consists of two counts. The first count alleges that the claimant, Velda Womble, suffered personal injuries as a result of drinking water from her well that contained excessive amounts of calcium chloride. The second count is a claim for damages to property owned by both claimants as a result of the saturation of calcium chloride in their well.

The facts appearing from the record, which were not disputed or effectively answered by the respondent, are these:

For several years prior to 1958, the respondent commenced depositing cinders in a pile along the south shoulder of U. S. Route 54. The pile was approximately 150 feet from the point at which, in the year 1958, claimants drilled a water well on their own property near their dwelling, which had been built in 1956.

In or about the year 1959, respondent deposited large amounts of calcium chloride upon and around the said cinder pile which respondent maintained for the purpose of using material from it, when needed, to remove or control ice and snow on the highway. Respondent continued to maintain the said storage pile of cinders and calcium chloride until respondent removed it in the latter part of

1966, shortly after the claimants became aware of the fact that the water in their well was contaminated by an excessive amount of calcium chloride.

The said storage pile of cinders and calcium chloride was never under cover and it blocked the natural drainage of water along the side of the highway. After a rain, surface water often accumulated around the pile until it seeped into the ground. Respondent acknowledged in its stipulation of facts that, "Undoubtedly calcium chloride saturated the soil and a vein of water under, beneath and running in a course toward the well of Claimants".

In May or June of 1966, claimants observed rusting and deterioration of their household utensils, fixtures, appliances and particularly their water system. When this damage to the property of claimants was noticed, claimants had analyses made of the water coming out of their well and were informed by responsible authorities that the corrosion, deterioration and disintegration of their appliances and water system was caused by the saturation of calcium chloride in their water supply.

At or about the same time, claimant Velda Womble became ill and was hospitalized. Medical examination showed that she was suffering from the results of chlorides in her intestines and other parts of her body. Claimant Woodrow Womble does not allege any injury to his health from drinking his well water, apparently explained by his testimony that he had quit drinking the water when it began to taste too salty. Mr. Womble said that his wife continued for a short time to drink the water until she became ill and the tests of the water indicated its contamination.

It is not clear from the record just how long the said storage pile of cinders and calcium chloride remained at its same location after Velda Womble became ill and after the contamination of the well water was confirmed in a test

made by the Illinois Department of Public Health. Nor was there any evidence showing that respondent had notice of these facts prior to the removal of the pile. The stipulation of facts by the parties on this point states: "Thereafter respondent removed several feet of the cinders and calcium chloride deposited along said U. S. Route 54 and filled the hole made by such removal with gravel, crushed rock and dirt, which dirt they took from a ditch along State Route 96."

Suffice it to say, official tests of the water in claimants' well, which were made after the pile was removed by the respondent, indicated a sharp drop in chloride concentration. It had not, by the last reported test on January 31, 1968, fallen below the maximum chloride concentration acceptable for drinking water which the parties stipulated to be 250 milligrams per liter. This stipulation agreed with the reports of the Illinois Department of Public Health.

We accept from the stipulation of facts by the parties, supported by claimants' exhibits, the following list of the results of analyses of water taken from claimants' well. Said analyses were made by the State of Illinois, Department of Public Health, George F. Forster, Chief, Division of Laboratories, and disclosed chloride content as follows:

| Date of Test | Chloride Concentration |
|---|---|
| 1. May 9, 1966 | 1700 mg. per liter |
| 2. October 7, 1966 | 420 mg. per liter |
| 3. November 7, 1966 | 330 mg. per liter |
| 4. December 30, 1966 | 450 mg. per liter |
| 5. January 27, 1967 | 290 mg. per liter |
| 6. March 17, 1967 | 450 mg. per liter |
| 7. May 8, 1967 | 710 mg. per liter |
| 8. June 15, 1967 | 530 mg. per liter |
| 9. July 5, 1967 | 390 mg. per liter |
| 10. August 18, 1967 | 400 mg. per liter |
| 11. October 5, 1967 | 450 mg. per liter |
| 12. January 31, 1968 | 380 mg. per liter |

It was stipulated by the parties that pollutional bacteria also appeared in all of said water analyses. There was some testimony to the effect that the dirt used by the respondent to fill the hole, after the removal of its pile of cinders and calcium chloride, may have been responsible for some such further and continuing pollution of claimants' well. We did not consider this particular evidence to be conclusive. In any event, it merely tends to support our decision in this case to award compensation to the claimants in the amount of the damages which the evidence shows they sustained.

At a second hearing in this case, held after respondent had asked leave to have further tests and surveys made, the parties entered into the stipulation of facts previously referred to in this opinion. The said stipulation also contained an agreement as to the amount of claimants' damages and as to any further liability of the respondent.

On these points it is stipulated as follows:

"13. As a result of the effect of said chloride in the body of claimant Velda Womble, the said claimant Velda Womble spent a total of $458.84 for hospitalization, doctors and drugs to cure herself of her ailments.

"14. Claimant Velda Womble also sustained loss or damages in the amount of $1695.80 for loss of time while hospitalized and recuperating and for partial temporary or permanent disability resulting from the serious hemorrhages she sustained due to the destruction of the mucous membrane and lining of her digestive tract caused by the deposit of the calcium chloride from the drinking water.

"15. Claimants Woodrow Womble and Velda Womble sustained damage and loss in the amount of $2845.36 to their water system, pumps, washing machines, refrigerator, humidifiers and as the cost of drilling a new well.

"17. It is further stipulated and agreed that if claimants drill or dig a new well, respondent shall in no wise be liable for any chloride or other contamination of any kind which therein appears."

Independently of the stipulation of facts and tacit admission of liability entered into between the parties, claimants sustained the burden of proving the allegations

contained in the two-count complaint. The evidence introduced showed conclusively that the respondent contaminated the claimants' water system and well by depositing the calcium chloride over a long period of time and that the personal injuries of the claimant Velda Womble were a result of drinking the water containing excessive quantities of calcium chloride.

This Court holds the respondent liable for damages in this case, not only on the admissions of its legal representative, but because the applicable law of this state is clear.

A property owner has a right to have the water in the wells on his property possess its natural quality, free from pollution caused by other landowners polluting percolating waters on their land. (*Phoenix* vs. *Graham*, 1953, 349 Ill. App. 326. *Van Brocklin* vs. *Gudema*, 1964, 50 Ill. App. 2d 20.) Furthermore, it is also a public nuisance to pollute the water of a spring or well. (Ch. 100 ½, Sec. 26, Ill.Rev.Stat., 1969.)

The State of Illinois takes a stern view of any act that results in water pollution. In the impartial exercise of its sovereign authority, the State must take the same view of any acts of its Division of Highways, however innocent the intentions may have been, if such acts result in the pollution or contamination of a well on neighboring property.

The Court finds that claimants are entitled to the following awards:

Claimant Velda Womble is hereby awarded the sum of $2154.64 for loss due to personal injuries.

Claimants Velda Womble and Woodrow Womble, jointly, are hereby awarded the sum of $2,845.36 for damages to their property.